

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-1637
Re: Whether 20% prize or award
tax levied by Article 7047f,
Vernon's Annotated Civil
Statutes, is due upon auto-
mobile given away by Titus
County Fair and Dairy Show.

By your letter of October 26, 1939, supplement-
ed by yours of November 7, 1939, you ask if the Titus Coun-
ty Fair and Dairy Show is liable to the State for the prize
or award tax levied by Article 7047f, Vernon's Annotated
Civil Statutes, upon the value of an automobile given away
by the Fair Association on September 22, 1939. From attach-
ed correspondence we quote the facts and conditions sur-
rounding the making of this award:

"The Titus County Fair & Dairy Show is held
once a year, during the fall, and runs for 5 days
only. The dates for the 1939 fair was Sept 18th
to Sept 23rd, both dates inc. For 1938, dates
were Sept 19th to Sept 24th. No doubt the dates
for 1940 will be somewhere around those dates.

"An admission fee of 10 cents for children
and 25 cents for adults are charged, except on
children's day which is usually on Tuesday they
are admitted free. On Wednesday of the fair,
all club boys and girls are admitted free, which
includes 4H Club boys and girls and Vocational
boys.

"Yes, there is a carnival playing on the
grounds, as it wouldnt be a fair if you didn't
have that in connection, rides for the children
and the younger crowd and side shows and con-
cessions that usually go with the carnival, and

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

for that privilege they give the Fair Assn 15%
of the gross on shows and rides.

"This past 1939 Fair, the School children
of the County had a programme in front of the
grand stand which was free to all that wished
to see it, this was on Tuesday Night;  On Wed-
nesday Night there was a double public wedding
put on by the local people of the town, which
was also free;  On Thursday Night in front of
the grand stand was a programme of band music,
by Mt. Pleasant High School Band and Gilmer
High School Band, this was also free; On Friday
Night and on Saturday Night the two automobiles
were given away, free.  There was no horse races,
saddle show, or dance in connection with the fair
where a separate admission charged.  The only
charge made to enter the fair grounds was the
above 10 cts and 25 cts, and you were privilege
to do as you please, see the agricultural ex-
hibits, women's exhibits, boys clubs exhibits,
the cattle exhibits and horses and mule exhibits,
and the above that I have outlined, without any
further charge or expense.

"The premiums listed in the Fair Catalogue
amounted to $1,000.00 and all taken for 1939 for
the various exhibitors.  The gate admission fee
and the carnival concessions is where the Fair
Association secures the money to get the $1,000
offered in premiums and to pay the insurance on
the buildings, to pay for labor and help in put-
ting a fair on, and to make additional improve-
ments as are needed from time to time for each
annual fair.  No salaries are paid to any offi-
cial; no dividends are paid to stockholders, but
any earnings made over and above the expense of
putting on a fair, if any, goes back into the
plant in additional premiums and new improvements
for the next year's fair.

"The Boys Scout have their hut on the fair
grounds which they use free of cost; The American
Legion have their building on the Fair grounds,
where they have their meetings, free of cost; The
Home Demonstration women of the County have their
building on the ground use free of cost to them;

Honorable George H. Sheppard, Page 3

The Mount Pleasant Baseball Club have their grandstand and diamond on the fair grounds free of cost to them, and the grounds are open to any other public enterprise or organization of a public nature. Meetings of a public nature are held quiet often at the Fair Park, free."

For the purposes of computing tax liabilities, Article 7047f-(a), Vernon's Annotated Civil Statutes, provides as follows:

"(a) Every person, firm, or corporation conducting a theatre, place of amusement, or any business enterprise in connection with the operation of which a prize in the form of money or something of value is offered or given to one or more patrons of such theatre, place of amusement, or business enterprise, and not given to all patrons thereof paying the same charge for any certain service, commodity, or entertainment, shall make a verified monthly report on the twenty-fifth day of each month to the Comptroller of Public Accounts of the State of Texas, showing the amount of money so given in prizes, and the value of all prizes or awards so given in connection with such business during the next preceding month."

Article 7047f-(b), Vernon's Annotated Civil Statutes, levies the following tax:

"(b) There is hereby levied a tax equal to twenty per cent (20%) of the value of all such money, prizes, and awards given in connection with the operation of each and all of the foregoing business enterprises, and at the time of making the report to the Comptroller of Public Accounts, the owner or operator of any such business shall pay to the State Treasurer such tax upon the total amount of money, prizes, and awards so given during the next preceding month. . . ."

It is manifest that the incidence of this tax levy is limited to prizes or awards offered or given in connection with the operation of "a theatre, place of amusement, or any business enterprise" and does not reach giving

Honorable George H. Sheppard, Page 4

of prizes or awards under any other conditions or in connection with any other projects or situations. We have here then no general prize or award tax levied upon the giving of prizes or awards, as such, but only a restricted tax of twenty per cent (20%) of the value of money prizes or awards given in connection with the operation of "a theatre, place of amusement, or any business enterprise." It follows then, that if the Titus County Fair and Dairy Show does not fall within the above classification, the twenty per cent (20%) prize or award tax upon the value of the automobile given away in connection with such fair does not accrue.

It is our conclusion that the Titus County Fair and Dairy Show, organized and conducted as outlined in the foregoing factual statement, and county fairs as generally organized and conducted, cannot be placed within the statutory classification of "a theatre, place of amusement, or any business enterprise" without defeating the intent and purpose of the Legislature, gathered from the entire Act.

In using the term "theatre" or "place of amusement" the Legislature of Texas did not purpose to create another and different classification of subjects for taxation, but merely to single out two types or species of the all-embracing genus or classification of "business enterprise." The reason for this action readily appears when we examine the legislative history of this tax measure and the alleged evils sought to be reached by this admittedly exhorbitant tax. At and before the passage of this statute the "Bank Night" plan of awarding prizes to the patrons of theatres and motion picture houses was in full flower, not having yet been stricken down by our Supreme Court. Out of abundant caution, lest perchance this method of prize-giving should escape the onus of this tax, the Legislature advisedly used the terms "theatre" and "place of amusement," in addition to the general classification of "any business enterprise." But we submit that if such "theatre" or "place of amusement" is not conducted as a "business enterprise," prizes given in connection therewith are not taxable.

We are assisted in reaching this conclusion by a glance at other parts of this Act. A reference to the caption of the so-called Omnibus Bill refers to the tax involved here as a tax on prizes given in connection with "business enterprises." Moreover, Subdivision (b) of Article 7047f, Vernon's Annotated Civil Statutes, levies a tax of twenty per cent

Honorable George H. Sheppard, Page 5

(20%) of the value of money, prizes and awards "given in connection with the operation of each and all of the fore-going business enterprises." Here the Legislature, in making the actual tax levy, did not repeat the terms "theatre" or "place of amusement" used in Subdivision (a) of this article for reasons hereinabove suggested, but levied this tax upon prizes given in connection with the "foregoing business enterprises," meaning to include "theatres" and "places of amusement." Therefore, we say that a prize or award given in connection with the operation of a "theatre" or "place of amusement" is not taxable unless such "theatre" or "place of amusement" is a "business enterprise."

The Titus County Fair and Dairy Show, operated and conducted as above outlined, is manifestly not a "theatre"; and we submit, from the factual statement upon which this opinion turns, that it is not any kind of a "business enterprise," whether "place of amusement" or other variant of "business enterprise." Amusement enough is there for man and boy - spectacular rides, wonders gathered from the five continents and seven seas, but the institution known as "county fair" is definitely not a "place of amusement" operated and conducted as a "business enterprise," upon which the Legislature intended to visit this burdensome tax. Its justification and moving purpose is education and instruction in the products of field, farm and factory.

It is the opinion of this department that no tax accrues to the State of Texas under Article 7047f, Vernon's Annotated Civil Statutes, against the Titus County Fair and Dairy Show by reason of the award or prize given in the form of an automobile, in connection with such Fair on September 22, 1939.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Pat M. Neff, Jr.
Assistant

PMN:LM

APPROVED DEC 23, 1939

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN